**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ICASHE, INC., <br><br> Plaintiff, <br><br> v. <br><br> LENOVO GROUP LIMITED, MOTOROLA MOBILE COMMUNICATION TECHNOLOGY LTD., and MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION COMPANY LIMITED, <br><br> Defendants. | Civil Action No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff iCashe, Inc. ("Plaintiff" or "iCashe"), by its attorneys, hereby alleges patent infringement against Defendants Lenovo Group Limited ("Lenovo"), Motorola Mobile Communication Technology Ltd. d/b/a Lenovo Mobile Communication Technology Ltd. ("Motorola"), and Motorola (Wuhan) Mobility Technologies Communication Company Limited ("Motorola Wuhan") (collectively "Defendants") as follows:

**INTRODUCTION**

1.     This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* iCashe alleges that Defendants have infringed and/or continue to infringe, directly and/or indirectly, five iCashe patents: U.S. Patent Nos. 9,122,965 ("'965 patent"), 9,483,722 ("'722 patent"), 11,694,053 ("'053 patent"), 8,403,219 ("'219 patent"), and 11,270,174 ("'174 patent") (collectively, the "iCashe Patents"), copies of which are attached

1

hereto as Exhibits 1-5, respectively.

2.      The iCashe Patents cover foundational technologies for contactless mobile payments, including: (1) the use of inventive performance-enhancement circuitry for active load modulation and/or signal amplification in near-field communications (NFC); and/or (2) the use of inventive circuitry to generate time-varying magnetic fields (TVMF) for NFC. The claimed inventions enable the Defendants, through their Motorola-branded devices, to offer superior mobile and wearable devices with NFC- and/or TVMF-based payment functionality, *e.g.*, Google Wallet or Google Pay, allowing users of such Motorola mobile and wearable devices to more easily, reliably, and efficiently complete payment transactions at point-of-sale payment terminals.

3.      Defendants have infringed and/or continue to infringe the iCashe Patents, directly and indirectly, by: (1) making, using, testing, selling, offering for sale, and/or importing into the United States, mobile devices and wearable devices that include infringing NFC and/or TVMF functionality; (2) practicing the claimed methods of the iCashe Patents in the United States by making, testing, and/or using Motorola mobile devices and wearable devices that include the claimed NFC and/or TVMF functionality; and (3) at least from the date of filing of this Complaint, inducing third parties to use, sell, offer for sale, and/or import into the United States, Motorola mobile devices and wearable devices that include infringing NFC and/or TVMF functionality, with knowledge of the iCashe Patents and of the third parties' direct infringement resulting therefrom.

4.      iCashe seeks damages, including past damages, and other relief for Defendants' infringement of the iCashe Patents.

**THE PARTIES**

5.     Plaintiff iCashe, Inc. is a corporation organized and existing under the laws of the State of Delaware, with offices at 5331 S. Macadam Ave., #251, Portland, Oregon 97239.

6.     Defendant Lenovo is a corporation organized under the laws of China, with its principal place of business at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R., China. Lenovo may be served with process pursuant to the provisions of the Hague Convention.

7.     Lenovo is a global manufacturer and seller of smartphones and wearable devices. Upon information and belief, Lenovo does business in Texas, directly and/or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Eastern District of Texas.

8.     Officers or executives of Lenovo (and/or affiliates acting in concert with Lenovo) regularly work from and reside in the United States, including in Texas. These officers or executives include at least Matthew Zielinski, Ashley Gorakhpurwalla, and Cliff Gumkowski. Such individuals are involved in the marketing, distribution, sale, import, and use of the infringing products in the United States. *See, e.g.*, https://www.linkedin.com/in/matthew-zielinski (last visited May 8, 2026).

9.     Lenovo owns or controls, directly or indirectly, each of the Lenovo entities with which it coordinates the infringing sale, offer for sale, import, use, and manufacture of infringing devices in the United States, including the other Defendants in this case. Lenovo operates and manages a global supply chain to develop, manufacture, and deliver infringing devices to the United States, including Texas and this District. At the direction or control of

3

Lenovo, infringing devices are packaged, shipped, and sold to customers in the United States. The concerted action between Lenovo and its numerous subsidiaries, including those listed further herein, is so dominant that there is no practical distinction between Lenovo and its subsidiaries.

10.     Defendant Motorola is organized under the laws of China, with a principal place of business located at Room 203A, Area A, No. 178 Xinfeng Road, Huizhi Space, Torch High-tech Zone, Xiamen, Fujian, China 361006. Motorola is a wholly owned subsidiary of Lenovo. Upon information and belief, Motorola acts in concert with, and under the direction and control of, Lenovo and/or other Lenovo subsidiaries/affiliates to sell, offer for sale, import, use, and make the infringing products in the United States. Motorola may be served with process pursuant to the provisions of the Hague Convention.

11.     Defendant Motorola Wuhan is a company organized under the laws of China. Motorola Wuhan has its principal place of business at No. 19, Gaoxin 4th Road, Donghu New Technology Development Zone, Wuhan, Hubei, China 430205. Motorola Wuhan is a wholly owned subsidiary of Lenovo. Upon information and belief, Motorola Wuhan acts in concert with, and under the direction and control of, Lenovo and/or other Lenovo subsidiaries and/or affiliates to sell, offer for sale, import, use, and make the infringing products in the United States, including mobile products. Motorola Wuhan may be served with process pursuant to the provisions of the Hague Convention.

**JURISDICTION AND VENUE**

12.     This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 101 *et seq.*

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1338(a).

14.    This Court has personal jurisdiction over Defendants. As alleged above with respect to each Defendant, individually, and as alleged above with respect to all Defendants, collectively, and acting in concert with one another, and at the instruction and direction and under the supervision and control of, and in concert with Lenovo Group Limited, Defendants regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this District, the State of Texas, and elsewhere in the United States. Defendants, directly and/or through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Asserted Patents. Courts in Texas, including this District, have concluded that Lenovo is subject to personal jurisdiction in the State of Texas. *See ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("[T]his Court finds that the exercise of personal jurisdiction over [Lenovo] is both reasonable and fair."); *see also AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-RWS-RSP, Dkt. No. 110 (report and recommendation) (E.D. Tex. Sept. 6, 2023) (similar).

15.    The Defendants have induced, and continue to induce their subsidiaries, affiliates, shippers, retail partners, and customers to make, use, sell, offer for sale, and/or import in or for the United States, including within this District, infringing products and place such products into the stream of commerce via established distribution channels, knowing or understanding that such products would be imported, sold, and used in the United States and that such products infringe the Asserted Patents, including in the Eastern District of Texas.

16.    The Defendants purposefully direct the infringing products identified herein into

established distribution channels within this District and the U.S. nationally. For example, Lenovo sells and offers to sell the infringing products through its websites, Lenovo.com and Motorola.com, which may be accessed throughout the United States, the State of Texas, and this District. Thus, in addition to their acts of direct and indirect infringement as described throughout this Complaint, the Defendants have also committed acts of indirect infringement at least by manufacturing products for the U.S. market, and/or directing them to the U.S. market, knowing they will cause infringement through import, sale, and/or use in the United States.

17.     Further, the Defendants have authorized sellers and sales representatives that offer for sale and sell infringing products throughout the State of Texas and to consumers throughout this District, including, on information and belief, at the following locations in this District: Best Buy, 5514 S. Broadway Avenue, Tyler, TX 75703; Best Buy, 422 West Loop 281, Longview, TX, 75605; Wal-Mart, 1701 East End Boulevard North, Marshall, TX 75670; T-Mobile, 116 East Loop 281, Suite 101, Longview, TX 75605; AT&T Store, 1712 E. Grand Avenue, Marshall, Texas 75670; Verizon authorized retailers, including Victra, 1006 East End Boulevard N, Suite A, Marshall, Texas 75670; and Amazon.com. Based on the Defendants' connections and relationships with these retailers and digital distribution platforms, the Defendants know that Texas is a termination point of their established distribution channels, including the online and physical stores offering Lenovo's Motorola-branded products to users in Texas. The Defendants, therefore, have purposefully directed their activities at the State of Texas, and should reasonably anticipate being brought before this Court.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400. Defendants directly and/or through subsidiaries or intermediaries, have transacted business in this District and have committed acts of direct infringement in this District by, among other

6

things, making, using, offer to sell, selling, and importing products that infringe the iCashe

Patents. Venue is proper as to Defendants because each Defendant is a foreign corporation and

thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND

### I.    Plaintiff iCashe and the Inventors

19.    The iCashe Patents relate to, among other things, circuits and systems that enable

high-performance communications between mobile devices and point-of-sale payment terminals

and facilitate mobile contactless payments (also commonly called "tap to" functionality), among

other contactless applications.

20.    The patented inventions resulted from years of investment in research and

development by iCashe, its predecessor Tyfone, Inc. ("Tyfone"), and the founders of those

companies, including inventor Dr. Siva Narendra.

21.    Dr. Narendra co-founded Tyfone in 2004 to create a secure payment platform

using mobile phones. Dr. Narendra envisioned a future in which consumers would use their

phones for payments instead of cash, checks, or credit cards, for both convenience and improved

security. Tyfone invested in research and development to create hardware for mobile phones to

communicate effectively and securely with point-of-sale (POS) payment terminals.

22.    Tyfone's innovations in mobile contactless payment hardware and systems have

resulted in over 40 patents covering these technologies. Tyfone has assigned certain of those

patents to iCashe, which has the responsibility to protect and license those patents as well as

carry on the mobile wallet business that originated with Tyfone.

### II.    The iCashe Patents

23.    Plaintiff iCashe solely owns the iCashe Patents, including the exclusive rights to

bring suit with respect to any past, present, and future infringement thereof.

24.     The '965 patent, entitled "13.56 MHz Enhancement Circuit for Smartcard Controller," was duly and legally issued on September 1, 2015, from a patent application filed October 17, 2014, with Siva G. Narendra, Saurav Chakraborty, and Prabhakar Tadepalli as the named inventors. The '965 patent claims priority to U.S. Patent Application No. 12/188,346, filed on August 8, 2008, now U.S. Patent No. 7,961,101.

25.     The '722 patent, entitled "Amplifier and Transmission Solution for 13.56MHz Radio Coupled to Smartcard Controller," was duly and legally issued on November 1, 2016, from a patent application filed October 17, 2014, with Siva G. Narendra, Saurav Chakraborty, and Prabhakar Tadepalli as the named inventors. The '722 patent claims priority to U.S. Patent Application No. 12/188,346, filed on August 8, 2008, now U.S. Patent No. 7,961,101.

26.     The '053 patent, entitled "Method and Apparatus for Transmitting Data via NFC for Mobile Applications Including Mobile Payments and Ticketing," was duly and legally issued on July 4, 2023, from a patent application filed February 18, 2021, with Siva G. Narendra, Saurav Chakraborty, and Prabhakar Tadepalli as the named inventors. The '053 patent claims priority to U.S. Patent Application No. 12/188,346, filed on August 8, 2008, now U.S. Patent No. 7,961,101.

27.     The '219 patent, entitled "Apparatus with Smartcard Circuitry Powered By a Mobile Device," was duly and legally issued on March 26, 2013, from a patent application filed October 12, 2012, with Siva G. Narendra, Thomas N. Spitzer, and Prabhakar Tadepalli as the named inventors. The '219 patent claims priority to U.S. Patent Application No. 11/063,291, filed on February 22, 2005, now U.S. Patent No. 7,581,678.

28.     The '174 patent, entitled "Mobile Phone with Magnetic Card Emulation," was

8

duly and legally issued on March 8, 2022, from a patent application filed September 15, 2020, with Siva G. Narendra, Thomas N. Spitzer, and Prabhakar Tadepalli as the named inventors. The '174 patent claims priority to U.S. Patent Application No. 11/063,291, filed on February 22, 2005, now U.S. Patent No. 7,581,678.

29. Each of the iCashe Patents is valid and enforceable.

30. Defendants are not authorized to practice the iCashe Patents.

31. The inventions recited in the iCashe Patents enable Defendants to offer, among other things, superior mobile and wearable devices with NFC- and/or TVMF-based "tap to" functionality.

### III. Defendants

32. Lenovo is a global powerhouse in the mobile device and wearable device market, which includes Motorola-branded smartphones, tablets, and smartwatches. On information and belief, Lenovo, directly, and/or through its subsidiaries, including Motorola and Motorola Wuhan, designs, manufactures, uses, offers for sale, sells, and/or imports into the United States—including into the Eastern District of Texas—millions of mobile devices and wearable devices every year.

33. Lenovo earned nearly $70 billion dollars in revenue in 2025 and generated over $50 billion dollars from its "Intelligent Devices Group," which includes smartphones and wearable devices.

### IV. Defendants' Direct Infringement and the Accused Instrumentalities

34. Defendants have directly infringed, and/or continue to infringe, pursuant to 35 U.S.C. § 271(a), one or more claims of each of the iCashe Patents (as further specified below as to each of the iCashe Patents, in Counts I-V) by: (1) making, using, testing, offering to sell,

selling within the United States, and/or importing into the United States, Defendants' mobile devices and/or wearable devices that include NFC- and/or TVMF-based payment functionality; and (2) practicing the claimed methods of the iCashe Patents in the United States by using and/or testing Defendants' mobile devices and/or wearable devices that include the claimed NFC- and/or TVMF-based payment functionality. The products that iCashe accuses of infringing the iCashe Patents are collectively referred to herein as the "Accused Instrumentalities."

35.    The Accused Instrumentalities include devices that incorporate the claimed inventions, including infringing implementations of NFC- and/or TVMF-based payment functionality, including but not limited to:

- Motorola smartphones and tablets (collectively, "Accused Mobile Devices"), including but not limited to Motorola Razr, Motorola Razr+, Motorola Razr Ultra, Motorola Edge, Motorola Edge+, Motorola Edge Pro, Motorola Edge Fusion, Motorola Edge Fusion+, Motorola Razr Fold, Motorola ThinkPhone, Moto G, Moto G Stylus, and Moto G Power smartphones, including the exemplary Motorola Edge (2024) smartphone;

- Motorola smartwatches and wearable devices ("Accused Wearables"), including but not limited to the Moto Watch smart watch; and

- Any additional Motorola or Lenovo devices that incorporate the NFC- and/or TVMF-based payment functionality described herein.

36.    The Accused Instrumentalities include products made, used, tested, offered for sale, sold within the United States, and/or imported into the United States within the last six years before the filing date of this Complaint. The Accused Instrumentalities also include products used to perform the claimed methods of the iCashe Patents within the last six years

10

before the filing date of this Complaint.

37.     The claims of the iCashe Patents relate generally to, *inter alia*, contactless mobile payments and the use of (1) inventive performance-enhancement circuitry for active load modulation and/or signal amplification in near-field communications (NFC); and/or (2) inventive circuitry to generate time-varying magnetic fields (TVMF) for NFC. *See, e.g.*, '965 at 19:11-20:40; '722 at 19:40-20:52; '053 at 20:10-21:32; '219 at 16:16-18:6; '174 at 17:9-18:51. The inventions of the iCashe Patents enable Defendants to offer superior mobile and wearable devices with NFC- and/or TVMF-based payment functionality, such as Google Wallet or Google Pay functionality, allowing users of such mobile and wearable devices to more easily, reliably, and efficiently complete payment transactions at a variety of point-of-sale payment terminals and at greater distances and angles than would be possible without the iCashe inventions.

38.     The presence of NFC- and/or TVMF-based payment functionality in the Accused Instrumentalities is established with respect to the exemplary Motorola Edge (2024) smartphone in the charts submitted herewith as Exhibits 6-10. On information and belief, all Accused Instrumentalities operate in substantially the same way as the exemplary Motorola Edge (2024) smartphone with respect to the functionality described below and in Exhibits 6-10.

## V.     Defendants' Indirect Infringement

39.     From at least the date of this Complaint, Defendants indirectly infringe the iCashe Patents by inducing infringement by others, such as importers, resellers, customers, and end users under 35 U.S.C. § 271(b) in this District and elsewhere in the United States and the State of Texas.

40.     Specifically, Defendants induce others' direct infringement of the iCashe Patents by selling Accused Instrumentalities to third-party customers, such as retailers, who then directly infringe by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the iCashe Patents.

41.     On information and belief, Defendants actively promote the NFC- and/or TVMF-based payment functionality of the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of the Accused Instrumentalities sold in the United States, Defendants pursue and obtain approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

42.     Defendants know that their customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States—or has deliberately avoided learning of the infringing circumstances so as to be willfully blind to the infringement that was induced—and Defendants specifically intend their customers to purchase those Accused Instrumentalities from Defendants and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendants' direct and indirect purchasers directly infringe the iCashe Patents by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

43.     Defendants further induce others' direct infringement of the iCashe Patents by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and

directly infringe the iCashe Patents. Defendants have knowledge that end users will use Accused Instrumentalities in the manner directed by Defendants and specifically intend that end users will perform such uses in the United States. In some instances, such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendants have configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities. In other instances, such infringing uses occur upon normal operation of, *e.g.*, the use of Google Wallet, Google Pay, or other "tap to" functionality of the Accused Instrumentalities.

44. Defendants have induced others' direct infringement despite actual notice that the Accused Instrumentalities infringe the iCashe Patents, as set forth herein. Defendants therefore have caused their purchasers and end users to directly infringe the iCashe Patents with knowledge of the iCashe Patents and specific intent that the purchasers and end users will directly infringe, or have deliberately avoided learning of the infringing circumstances so as to be willfully blind to the infringement that was induced.

45. Defendants derive significant revenue by selling products, including the Accused Instrumentalities, to third parties who directly infringe one or more claims of the iCashe Patents.

46. The above-described acts of indirect infringement committed by Defendants have caused injury and damage to Plaintiff iCashe, and will cause additional severe and irreparable injury and damages in the future.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,122,965**

47. The allegations set forth in paragraphs 1 through 46 of this Complaint are incorporated by reference as though fully set forth herein.

48.     Pursuant to 35 U.S.C. § 282, the '965 patent is presumed valid.

49.     Defendants have directly infringed and continue to infringe one or more claims of the '965 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

50.     The Motorola Edge (2024) smartphone provides a representative example of Defendants' infringement of the '965 patent. The Accused Instrumentalities directly infringe at least claim 7 of the '965 patent at least in the manner described with respect to the exemplary Motorola Edge (2024) smartphone in Exhibit 6, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 7, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

51.     The descriptions and infringement theories set forth in Exhibit 6 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendants in the course of this case.

52.     On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Motorola Edge (2024) smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality. Exhibit 6 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

53.     Defendants have actual notice pursuant to 35 U.S.C. § 287(a) of the '965 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '965 patent claims following issuance of the '965 patent.

14

54.     Defendants indirectly infringe the '965 patent by actively inducing the direct infringement of others of the '965 patent, in the United States, the State of Texas, and the Eastern District of Texas.

55.     Defendants induce, through affirmative acts, their customers and other third parties, such as retailers and end users, to directly infringe the '965 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '965 patent.

56.     On information and belief, Defendants actively promote the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendants' Accused Instrumentalities sold in the United States, Defendants pursue and obtain approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

57.     Defendants know that their customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendants specifically intend their customers to purchase those Accused Instrumentalities from Defendants and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendants' direct and indirect purchasers directly infringe the '965 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

58.     Defendants further induce others' direct infringement of the '965 patent by providing instruction and direction to end users, such as consumers, about how to use the

15

Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '965 patent. Defendants have knowledge that end users will use Accused Instrumentalities in the manner directed by Defendants and specifically intend that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendants have configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

59. Defendants induce others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '965 patent. At least as of the date of filing of this Complaint, Defendants know that the induced conduct would constitute infringement—and intend that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

60. The above-described acts of infringement committed by Defendants have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

61. Defendants' acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

62. iCashe is entitled to recover damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

16

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,483,722

63.     The allegations set forth in paragraphs 1 through 46 of this Complaint are incorporated by reference as though fully set forth herein.

64.     Pursuant to 35 U.S.C. § 282, the '722 patent is presumed valid.

65.     Defendants have directly infringed and continue to infringe one or more claims of the '722 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

66.     The Motorola Edge (2024) smartphone provides a representative example of Defendants' infringement of the '722 patent. The Accused Instrumentalities directly infringe at least claim 11 of the '722 patent at least in the manner described with respect to the exemplary Motorola Edge (2024) smartphone in Exhibit 7, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 11, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

67.     The descriptions and infringement theories set forth in Exhibit 7 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendants in the course of this case.

68.     On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Motorola Edge (2024) smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality. Exhibit 7 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

69.     Defendants have actual notice pursuant to 35 U.S.C. § 287(a) of the '722 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has

17

complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '722 patent claims following issuance of the '722 patent.

70.     Defendants indirectly infringe the '722 patent by actively inducing the direct infringement of others of the '722 patent, in the United States, the State of Texas, and the Eastern District of Texas.

71.     Defendants induce, through affirmative acts, their customers and other third parties, such as retailers and end users, to directly infringe the '722 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '722 patent.

72.     On information and belief, Defendants actively promote the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendants' Accused Instrumentalities sold in the United States, Defendants pursue and obtain approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

73.     Defendants know that their customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendants specifically intend their customers to purchase those Accused Instrumentalities from Defendants and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendants' direct and indirect purchasers directly infringe the '722 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such

18

Accused Instrumentalities in the United States.

74.    Defendants further induce others' direct infringement of the '722 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '722 patent. Defendants have knowledge that end users will use Accused Instrumentalities in the manner directed by Defendants and specifically intend that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendants have configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

75.    Defendants induce others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '722 patent. At least as of the date of filing of this Complaint, Defendants know that the induced conduct would constitute infringement—and intend that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

76.    The above-described acts of infringement committed by Defendants have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

77.    Defendants' acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

19

78.     iCashe is entitled to recover damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,694,053**

79.     The allegations set forth in paragraphs 1 through 46 of this Complaint are incorporated by reference as though fully set forth herein.

80.     Pursuant to 35 U.S.C. § 282, the '053 patent is presumed valid.

81.     Defendants' have directly infringed and continue to infringe one or more claims of the '053 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

82.     The Motorola Edge (2024) smartphone provides a representative example of Defendants' infringement of the '053 patent. The Accused Instrumentalities directly infringe at least claim 1 of the '053 patent at least in the manner described with respect to the exemplary Motorola Edge (2024) smartphone in Exhibit 8, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 1, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

83.     The descriptions and infringement theories set forth in Exhibit 8 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendants in the course of this case.

84.     On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Motorola Edge (2024) smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality. Exhibit 8 is thus illustrative of the manner in which each of

20

the Accused Instrumentalities infringes.

85.    Defendants have actual notice pursuant to 35 U.S.C. § 287(a) of the '053 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '053 patent claims following issuance of the '053 patent.

86.    Defendants indirectly infringe the '053 patent by actively inducing the direct infringement of others of the '053 patent, in the United States, the State of Texas, and the Eastern District of Texas.

87.    Defendants induce, through affirmative acts, their customers and other third parties, such as retailers and end users, to directly infringe the '053 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '053 patent.

88.    On information and belief, Defendants actively promote the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendants' Accused Instrumentalities sold in the United States, Defendants pursue and obtain approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

89.    Defendants know that their customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendants specifically intend their customers to purchase those Accused Instrumentalities from Defendants and sell the Accused Instrumentalities in the United States or

21

cause Accused Instrumentalities to be sold in the United States. Defendants' direct and indirect purchasers directly infringe the '053 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

90.     Defendants further induce others' direct infringement of the '053 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '053 patent. Defendants have knowledge that end users will use Accused Instrumentalities in the manner directed by Defendants and specifically intend that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendants have configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

91.     Defendants induce others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '053 patent. At least as of the date of filing of this Complaint, Defendants know that the induced conduct would constitute infringement—and intend that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

92.     The above-described acts of infringement committed by Defendants have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and

damages in the future.

93.    Defendants' acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

94.    iCashe is entitled to recover damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,403,219

95.    The allegations set forth in paragraphs 1 through 46 of this Complaint are incorporated by reference as though fully set forth herein.

96.    Pursuant to 35 U.S.C. § 282, the '219 patent is presumed valid.

97.    Defendants have directly infringed and continue to infringe one or more claims of the '219 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

98.    The Motorola Edge (2024) smartphone provides a representative example of Defendants' infringement of the '219 patent. The Accused Instrumentalities directly infringe at least claim 1 of the '219 patent at least in the manner described with respect to the exemplary Motorola Edge (2024) smartphone in Exhibit 9, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 1, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

99.    The descriptions and infringement theories set forth in Exhibit 9 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendants in the course of this case.

100.    On information and belief, the other Accused Instrumentalities are in relevant part

23

substantially similar to the exemplary Motorola Edge (2024) smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality. Exhibit 9 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

101.    Defendants have actual notice pursuant to 35 U.S.C. § 287(a) of the '219 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '219 patent claims following issuance of the '219 patent.

102.    Defendants indirectly infringe the '219 patent by actively inducing the direct infringement of others of the '219 patent, in the United States, the State of Texas, and the Eastern District of Texas.

103.    Defendants induce, through affirmative acts, their customers and other third parties, such as retailers and end users, to directly infringe the '219 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '219 patent.

104.    On information and belief, Defendants actively promote the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendants' Accused Instrumentalities sold in the United States, Defendants pursue and obtain approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

105.    Defendants know that their customers will sell infringing Accused

Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendants specifically intend their customers to purchase those Accused Instrumentalities from Defendants and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendants' direct and indirect purchasers directly infringe the '219 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

106.     Defendants further induce others' direct infringement of the '219 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '219 patent. Defendants have knowledge that end users will use Accused Instrumentalities in the manner directed by Defendants and specifically intend that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendants have configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

107.     Defendants induce others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '219 patent. At least as of the date of filing of this Complaint, Defendants know that the induced conduct would constitute infringement—and intend that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of

25

committing these acts so as to be willfully blind to the infringement that was induced.

108.    The above-described acts of infringement committed by Defendants have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

109.    Defendants' acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

110.    iCashe is entitled to recover damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 11,270,174

111.    The allegations set forth in paragraphs 1 through 46 of this Complaint are incorporated by reference as though fully set forth herein.

112.    Pursuant to 35 U.S.C. § 282, the '174 patent is presumed valid.

113.    Defendants have directly infringed and continue to infringe one or more claims of the '174 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

114.    The Motorola Edge (2024) smartphone provides a representative example of Defendants' infringement of the '174 patent. The Accused Instrumentalities directly infringe at least claim 1 of the '174 patent at least in the manner described with respect to the exemplary Motorola Edge (2024) smartphone in Exhibit 10, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 1, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

115.    The descriptions and infringement theories set forth in Exhibit 10 are preliminary

26

and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendants in the course of this case.

116. On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Motorola Edge (2024) smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality. Exhibit 10 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

117. Defendants have actual notice pursuant to 35 U.S.C. § 287(a) of the '174 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '174 patent claims following issuance of the '174 patent.

118. Defendants indirectly infringe the '174 patent by actively inducing the direct infringement of others of the '174 patent, in the United States, the State of Texas, and the Eastern District of Texas.

119. Defendants induce, through affirmative acts, their customers and other third parties, such as retailers and end users, to directly infringe the '174 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '174 patent.

120. On information and belief, Defendants actively promote the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendants' Accused Instrumentalities sold in the United States, Defendants pursue and obtain approval from U.S. and state regulatory agencies, such as the United States Federal

27

Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

121.    Defendants know that their customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendants specifically intend their customers to purchase those Accused Instrumentalities from Defendants and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendants' direct and indirect purchasers directly infringe the '174 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

122.    Defendants further induce others' direct infringement of the '174 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '174 patent. Defendants have knowledge that end users will use Accused Instrumentalities in the manner directed by Defendants and specifically intend that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendants have configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

123.    Defendants induce others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '174 patent. At least as of the date of filing of this Complaint, Defendants know that the induced conduct would constitute infringement—and

intend that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

124.    The above-described acts of infringement committed by Defendants have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

125.    Defendants' acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

126.    iCashe is entitled to recover damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

## JURY TRIAL DEMANDED

iCashe, Inc. hereby demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff iCashe respectfully requests that this Court:

A.    Enter judgment that Defendants have infringed one or more claims of each of the iCashe Patents and continue to infringe those claims, and that such infringement is willful;

B.    Enter an order, pursuant to 35 U.S.C. § 284, awarding to Plaintiff iCashe monetary relief in an amount adequate to compensate for Defendants' infringement of the iCashe Patents, in an amount to be determined at trial, but not less than a reasonable royalty, as well as pre- and post-judgment interest and costs and enhanced damages for Defendants' willful infringement of the iCashe Patents;

29

C.    Enter an order that Defendants pay to Plaintiff iCashe ongoing royalties in an amount to be determined for any infringement occurring after the date that judgment is entered;

D.    Enter an order, pursuant to 35 U.S.C. § 285, declaring this to be an exceptional case and thereby awarding to Plaintiff iCashe its reasonable attorneys' fees; and

E.    Enter an order awarding to Plaintiff iCashe such other and further relief, whether at law or in equity, that this Court deems just, equitable, and proper.

Dated: May 8, 2026          Respectfully submitted,

By: */s/ Aaron R. Fahrenkrog by permission Andrea L. Fair*

Aaron R. Fahrenkrog
MN Bar No. 0386673 (admitted in this District)
Email: afahrenkrog@robinskaplan.com
Logan J. Drew
MN Bar No. 0389449 (admitted in this District)
Email: ldrew@robinskaplan.com
Emily J. Tremblay
MN Bar No. 0395003 (to appear *pro hac vice*)
Email: etremblay@robinskaplan.com
Jessica L. Gutierrez
MN Bar No. 0396359 (to appear *pro hac vice*)
Email: jgutierrez@robinskaplan.com
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181

Of Counsel:
Andrea L. Fair
Texas State Bar No. 24078488
E-mail: andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
*Attorneys for Plaintiff iCashe, Inc.*

31